IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE CENTRE PC and THE CENTRE LLC, ) ) ) Plaintiffs, ) ) vs. ) ) THE AUCTUS GROUP, ) ) Defendant. ) | Case No. 22 C 959 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

    Plaintiffs The Centre PC and The Centre LLC (collectively The Centre) have sued The Auctus Group for breach of contract, fraud, and other claims. The claims arise from the parties' business relationship, which involved Auctus's processing of claims by The Centre to medical insurance companies relating to patient care. Auctus has moved to dismiss counts three, four, and five of The Centre's second amended complaint. For the reasons stated below, the Court dismisses counts four and five but declines to dismiss count three.

## Facts

    The facts as set out here all come from The Centre's second amended complaint.

    The Centre PC operates a plastic surgery and rehabilitation center. The Centre LLC operates an ambulatory surgery center that provides surgical and medical facilities, equipment, and personnel support to The Centre PC. Auctus assists medical providers

in navigating the insurance payment approval process. John Gwin is Auctus's co-founder of and an agent of the company.

In early 2019, The Centre sought to hire a medical billing company to prepare, submit, and follow-up on insurance claims. The Centre and Gwin, on behalf of Auctus, spoke about Auctus's services and how it could provide medical billing expertise regarding plastic surgery claims. Auctus informed The Centre that it could integrate specific new technologies to process The Centre's insurance claims more efficiently. Auctus assured The Centre that it would have no issues or problems handling The Centre's complicated claims and represented that it could code The Centre's claims faster.

In April 2019, The Centre and Auctus executed a written contract under which Auctus became the exclusive biller for The Centre's services rendered to patients. Auctus agreed to perform tasks such as preparing follow-up inquiries to third-party payers, providing The Centre with a custom financial analysis and reporting packages, and processing approved adjustments. Starting in June 2019, Auctus took over full responsibility for The Centre's medical billings.

In this lawsuit, The Centre alleges that Auctus performed in a deficient manner. First, it contends that even though Auctus promised to assign a certified professional coder (CPC) to review and improve the billing process, it did not do so until October 2019. This, The Centre alleges, led to disarray in its billing for months. Second, The Centre alleges that Auctus lacked experience or expertise in the necessary software and thus outsourced billing input to a foreign company, which in turn hired insufficiently trained personnel. This, in turn, caused The Centre's claims to be submitted with

numerous errors, leading to rejections and denials by insurers. The Centre says that Auctus failed to consult with it about hiring a foreign company and that the hiring breached the parties' agreement. The Centre also alleges that Auctus promised to take appropriate action to remedy problems with its medical billing software but that it failed to rectify rejected and denied claims and did not take meaningful action to investigate or remedy issues with its submissions. According to The Centre, Auctus's various performance errors caused The Centre to receive insufficient payments for the goods and services it provided to patients.

In August 2020, due to what it characterizes as a very large number of insufficient payments, The Centre hired a professional billing and internal auditing specialist to review all of the claim submission issues. It contends that even though Auctus agreed to pay half the specialist's salary, it paid far less than that. The Centre further alleges that the specialist found that Auctus had submitted numerous claims with incorrect coding and had resubmitted erroneous claims without any corrections, and that in total the specialist's audit found that The Centre had been paid at least $3 million less than what it was properly owed by insurers.

The Centre's second amended complaint includes five claims. Count one is a claim for breach of contract; The Centre alleges that Auctus breached its contractual obligations by failing to take the necessary steps to submit proper bills and obtain proper payment from insurers. Count two is a claim for fraud; The Centre alleges that Auctus knowingly misrepresented its skill, experience, and expertise, and more particularly its ability to adequately manage and process The Centre's billings. In count three, The Centre alleges that August violated the Illinois Consumer Fraud Act (ICFA) by

3

deceiving The Centre with false statements about its expertise in processing medical bills. Count four is a claim for negligence; The Centre alleges that Auctus negligently violated a duty of care by incorrectly processing the insurance claims. In count five, The Centre alleges that Auctus breached a fiduciary duty by failing to process The Centre's billings in an appropriate and timely manner.

Auctus has moved for judgment on the pleadings on counts three, four, and five. It contends that each of these claims is deficient as a matter of law. Auctus also seeks a ruling barring further amendment on the basis of futility.

## Discussion

"Judgment on the pleadings is appropriate when there are no disputed issues of material fact and it is clear that the moving party . . . is entitled to judgment as a matter of law." *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). The standard for assessing such a motion is the equivalent of that used in considering a motion to dismiss for failure to state a claim. Specifically, to survive a motion for judgment on the pleadings, the complaint must "state a claim that is plausible on its face." *ADM Alliance Nutrition, Inc. v. SGA Pharm Lab, Inc*. 877 F.3d 742, 746 (7th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 590 (2007)). In considering the motion, a court considers the facts and draws reasonable inferences in favor of the non-moving party. *Unite Here*, 862 F.3d at 595.

1.  **ICFA claim (count three)**

In count three, The Centre alleges that Auctus violated the ICFA. The elements of a claim under the ICFA are "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the occurrence of the

deception in the course of conduct involving trade and commerce; and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Capiccioni v. Brennan Naperville, Inc.*, 339 Ill. App. 3d 927, 933, 791 N.E.2d 553, 555 (2003). "[D]eceptive acts or practices" may include misrepresentations, false promises, and omission of material facts. *See Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011). ICFA does not require intentional misrepresentation; "innocent misrepresentations or omissions intended to induce the plaintiff's reliance are actionable under the statute." *Capiccioni*, 339 Ill. App. 3d at 933, 791 N.E.2d at 933. Actual reliance, however, is required. *See id.*

The Centre has adequately alleged a claim under the ICFA. It alleges that Auctus committed deceptive acts by falsely claiming it had the experience and expertise to process The Centre's medical insurance claims more efficiently, when in fact it did not. The Centre alleges that these promises were a primary factor in its decision to enter into the arrangement with Auctus. It also alleges that its reliance on these false representations led to a loss of over $3 million.

Auctus contends that The Centre's ICFA claim is simply a duplicate of its breach of contract claim. It is true that a claim that amounts to a breach of contract claim is not actionable under the ICFA. *See Greenberger*, 631 F.3d at 933. And "when allegations of consumer fraud arise in a contractual setting, the plaintiff must prove that the defendant engaged in deceptive acts or practices distinct from any underlying breach of contract." *Id.* But here The Centre has not simply repackaged its breach of contract claim. Rather, it asserts that it was induced to enter into the contract in the first place by Auctus's deceptive acts, which included misrepresentations regarding its capabilities.

5

"A misrepresentation of present facts, unlike a misrepresentation of future intent to perform under the contract, is collateral to the contract, even though it may have induced the plaintiff to sign it, and therefore involves a separate breach of duty." *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 309 (7th Cir. 2018). Though *NewSpin* involved a common law fraud claim, the same reasoning applies to The Centre's ICFA claim. As in this case, the plaintiff in *NewSpin* alleged that the defendant had misrepresented its skillset to induce the plaintiff to enter into a contract. The Court concludes that the ICFA claim is sufficiently distinct from the breach of contract claim and declines to dismiss count three.

**2.     Negligence claim (count four)**

In Count 4, The Centre asserts a negligence claim against Auctus for processing the insurance claims incorrectly. Auctus seeks dismissal of this claim the *Moorman* doctrine, which prevents a plaintiff from recovering solely economic loss under negligence. *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 91, 435 N.E.2d 443, 453 (1982). The *Moorman* doctrine is premised upon the theory that tort law affords a remedy for losses occasioned by personal injuries or damage to one's property, but contract law offers the appropriate remedy for economic losses occasioned by diminished commercial expectations. *See In re Chicago Flood Litig.,* 176 Ill. 2d 179, 200, 680 N.E.2d 265, 275 (1997).

The test for distinguishing between tort recovery and economic loss turns upon how the damages occurred. Economic loss "has been defined as 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits – without any claim of personal injury or damages to other

property." *Moorman*, 91 Ill. 2d at 82, 435 N.E.2d at 449 (citation omitted). In this case, as Auctus contends, the claimed damages are entirely economic. Auctus argues that because The Centre has not alleged any personal injury or property damage, but rather only economic losses, the *Moorman* doctrine bars The Centre's negligence claim.

The Centre argues, however, that an exception to the *Moorman* doctrine applies, specifically, the proposition that *Moorman* does not bar a claim "where the plaintiff's damages are proximately caused by a defendant's intentional, false representation . . . ." *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 680 (7th Cir. 2011). The problem is that the fraud exception applies to claims of fraud. *See, e.g., O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 722 (N.D. Ill. 2020). That's why, for example, count two of the second amended complaint is not subject to dismissal under *Moorman*. Count four, however, is a negligence claim. The fraud exception therefore does not apply. The Court dismisses count four.

### 3. Fiduciary duty claim (count five)

In count five, The Centre alleges that Auctus breached a fiduciary duty by failing to process The Centre's billings in an appropriate and timely manner. Auctus seeks dismissal of this claim on the ground that it is duplicative of the breach of contract claim. There's no question that's correct. And in addition, the claim as currently pleaded really doesn't include anything at all describing the source of the claimed fiduciary duty. The Court dismisses count five, with leave to amend. Any proposed amendment, however, will have to pass the futility test. *See, e.g., McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014).

**Conclusion**

For the reasons stated above, the Court dismisses count four (negligence) on the merits under the *Moorman* doctrine and dismisses count five (breach of fiduciary duty) with leave to amend, but denies defendant's motion to dismiss [dkt. no. 50] as to count three (violation of ICFA). The telephonic status hearing set for 8:55 AM on September 12, 2023 is advanced to 8:50 AM on that same date, using call-in number 888-684-8852, access code 746-1053.

Date: September 10, 2023

_____
MATTHEW F. KENNELLY
United States District Judge